# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AZIZ MOUMEN,** | : | No. 3:23-CV-1343 |
| | : | |
| **Plaintiff** | : | **(Caraballo, M.J.)** |
| | : | |
| **v.** | : | |
| | : | |
| **FRANK BISIGNANO,**[1] | : | |
| **Commissioner of Social** | : | |
| **Security Administration,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

## I.    Introduction

Pending before the Court is the appeal by Plaintiff Aziz Moumen of the decision by the Commissioner of Social Security Administration ("the Commissioner") to deny his application for disability benefits. Moumen seeks judicial review of the Commissioner's final decision to deny his application for disability benefits under Titles II and XVI of the Social Security Act. The Court has jurisdiction pursuant to Title 42, United States Code, Section 405(g).

---

[1] Frank Bisignano became the Commissioner on May 7, 2025. Pursuant to Federal Rule of Civil Procedure 25(d) and Title 42, United States Code, Section 405(g), Bisignano is substituted for Kilolo Kijakazi, a former Commissioner, as the Defendant in this suit.

Moumen raises two alleged errors that Administrative Law Judge ("ALJ") Theodore Burock committed when determining that Moumen was not disabled under the Social Security Act. Namely, Moumen claims that the ALJ failed to account for: (1) severe impairments when defining the limitations on his residual functional capacity; and (2) non-severe impairments when defining the limitations on his residual functional capacity. Doc. 8 at 1–2. The matter is fully briefed and ripe for decision.

As explained below, ALJ Burock's conclusion on each of the challenged issues was supported by substantial evidence in the record, coupled with sufficient reasoning to permit meaningful judicial review. Accordingly, the Court affirms the Commissioner's decision to deny Moumen's claim for social security disability benefits.

## II. **Background**

On September 30, 2020, Moumen applied for social security disability benefits, alleging complete disability from right shoulder pain, neck pain, low back pain, depression, anxiety, and inguinal hernia

pain post repair. Tr.[2] 68–69. The Social Security Administration ("SSA") denied Moumen's application on February 9, 2021. *Id.* at 152–55, 160–63. Moumen requested reconsideration, *id.* at 168, but his application was denied again on July 9, 2021. *Id.* at 170–76, 180–83. Moumen accordingly requested a hearing on July 19, 2021. *Id.* at 190–91. The SSA granted the request and held an administrative hearing. *Id.* at 15.

The hearing, held on November 3, 2021, *id.*, concerned whether Moumen was disabled within the meaning of the Social Security Act from April 1, 2019, through December 31, 2025—the last date Moumen is eligible to receive social security disability insurance. *Id.* at 16. ALJ Burock evaluated clinical records, medical history, medical expert reports, vocational expert testimony, and Moumen's own testimony. *Id.* at 37–67. At the beginning of the hearing, Moumen observed that he, "a younger individual," had attempted to go back to work and was working at the time of the hearing. *Id.* at 39–40.

---

[2] The administrative record, referred to herein as "Tr.," encompasses Docs. 7, 7-1, 7-2, 7-3, 7-4, 7-5, 7-6, 7-7, 7-8.

Toward the end of the hearing, ALJ Burock asked Heili Randall, a vocational expert, to assess whether alternative employment options in the national economy exist for Moumen. *Id.* at 58–66. After a series of hypotheticals, Randall concluded that an applicant who fits the limitations provided would be able to work as a marker, a photocopying machine operator, or an order caller, and that his testimony was consistent with the *Dictionary of Occupational Titles*. *Id.* at 58–63.

Based on the evidence, the ALJ denied Moumen's disability claim on May 27, 2022, *id.* at 12, finding that he was not disabled during the period at issue. *Id.* at 15–27. ALJ Burock reached that conclusion by employing a five-step analytical process required under the Social Security Act to evaluate disability insurance and supplement security income claims. *See* 20 C.F.R. § 404.1520(a)(4).

The process requires sequential consideration of: (1) whether the claimant is engaged in substantial gainful work activity; (2) the medical severity of the claimant's impairments; (3) whether the impairment meets or equals a defined list of impairments; (4) a comparison between the claimant's past relevant work and residual functional capacity, i.e., the most work that a claimant can perform despite his or his

limitations, *see id.* § 404.1545(a); and (5) an assessment of the claimant's residual functional capacity and his or his age, education, and work experience. *Id.* § 404.1520(a)(4)(i)–(v). Should a claimant proceed past the first three steps, the Commissioner will not find the claimant disabled when he or he can perform past relevant work under the third step or adjust to other work under the fourth step. *Id.* § 404.1520(a)(4)(iv)–(v), (f), (g).

Applying that analysis, the ALJ first determined that Moumen met the insurance requirements of the Social Security Act, *see id.* § 404.130, through December 31, 2025. Tr. 18. ALJ Burock also found that Moumen engaged in substantial gainful activity from April 2021 to the date of his decision. *Id.* at 18–19. As that recent work history, however, did not date back to April 2019, and thus did not encompass the entire period of claimed disability, the ALJ "proceed[ed] with the sequential evaluation process for the entire period since the alleged onset date." *Id.* at 19.

At the second step of the analysis, the ALJ found that Moumen suffered from two severe impairments: degenerative disc disease in the cervical and lumbar spine, and osteoarthritis in the right shoulder. *Id.*

ALJ Burock also acknowledged that Moumen suffered from anxiety and depression. But the medical evidence indicated that neither was severe enough to rise to the level of an impairment. *Id.* at 19–21.

Moving to the third step of the analysis, the ALJ determined that Moumen's impairments failed to meet or medically equal one of the impairments listed in the SSA's regulations. *Id.* Regarding Moumen's degenerative disc disease and osteoarthritis, ALJ Burock found that:

> The claimant does not meet Listings 1.17, 1.18, or 14.09A because there is little evidence of record the claimant has medical documentation of at least one of the following: a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; an inability to use one upper extremity, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or an inability to use both upper extremities. He does not meet Listings 14.09B and 14.09D because there is little evidence the claimant has at least two of the following conditions: severe fatigue; fever; malaise; or involuntary weight loss. The claimant does not meet Listing 14.09C because there is minimal evidence he has ankylosing spondylitis or other spondyloarthropathies.

*Id.* at 21. In sum, Moumen did not automatically qualify as disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

Accordingly, the ALJ proceeded to determine Moumen's residual functional capacity before addressing the final two steps in the

sequential analysis. Using the two-step analysis as provided by the regulatory framework, ALJ Burock considered the administrative record and hearing testimony. In doing so, the ALJ noted that Moumen's conditions were "manageable," Tr. 23, and that the claimant resumed working as a machinist "attending to a grinder machine." *Id.* (quotation omitted). Moumen also submitted his own evidence about his spine pain, which "was largely already exhibited at Exhibit 12F," and failed to "submit any additional evidence of treatment for the claimant's spinal condition." *Id.*

Meanwhile, other parts of the administrative record indicated impairments and symptoms that were inconsistent with the claimant's statements about the severity of his impairments:

> Longitudinal treatment notes generally show the claimant is in no acute distress with normal gait, good strength, intact sensation, normal muscle tone, normal muscle bulk, capillary refill in less than two seconds, and no focal deficit . . . . In July 2019, the claimant's primary care provider stated the claimant "still has right shoulder pain, [b]ut it is greatly improved" and "was given [medication] for [h]is left groin pain. He declined to take the [medication]. The [claimant] states the pain in the left groin is manageable" (5F/46). While the claimant alleges he cannot work, in October 2020, the claimant's primary care provider noted "is working as machinist again about 20 days ago" (5F/82). A June 2020 cervical spine MRI showed multilevel uncovertebral hypertrophy causing mild neural foraminal stenosis, with no

significant interval worsening compared to 2016 (8F/20). In December 2020, the claimant's primary care provider indicated the claimant had "[s]ome improvement" (5F/104). In July 2021, the claimant's primary care provider remarked the claimant "went to work attending to a grinder machine" (14F/7). Although the claimant alleges he has trouble standing, in October 2021, the claimant's orthopedist observed the claimant "does endorse a work-related incident last year in October of 2020, when he was lifting a granite slab" and "is now doing a different job, standing with requirements to stand for 10 hours" (16F/5).

In November 2021, the claimant's orthopedist reported the claimant "did undergo an MRI at Good Samaritan Hospital. The [claimant] was to return to our clinic today with a copy of his MIR but unfortunately, he does not have tie disc with him" (17F/7). . . . Additionally, the claimant's treatment has largely been conservative, as there is minimal medical evidence of surgical treatment or narcotic pain medication. Moreover, there is minimal medical evidence of record of significant treatment—except for two orthopedic visits—since the claimant returned to full time work in April 2021. For example, there is no medical evidence of record the claimant received physical therapy or epidural steroid injections in or since April 2021. Indeed, in October 2021, the claimant's medication noted "has recently been seen by his primary care provider and prescribed Flexeril. He is also routinely taking ibuprofen" (16F/5).

The claimant's allegations that he has pain are also inconsistent with his activities of daily living, which shows he can prepare simple meals, do light cleaning, drive, shop in stores, and manage money. The claimant notes he reads[] and has no problems with family, friends, neighbors, authority figures, and others. He testified he started working where he lifts 25 to 50 pounds (Hearing Testimony; 5E). . . .

*Id.* at 22–23.

The ALJ's evaluation of Moumen also included a comparison of his reported activities to several state agency medical and psychological consultants' opinions, finding them consistent with one another:

> The record includes a February 2021 statement from a state agency medical consultant, Roman Oleh Bilynsky, MD. Dr. Bilynsky stated the claimant could perform medium work; frequently balance, stoop, climb ladders, ropes, or scaffolds; and occasionally crawl (1A/10-13; 2A/10-14). The record also contains a July 2021 statement from a state agency medical consultant, Angela Teresa Walker, MD. Dr. Walker noted the claimant could perform medium work; occasionally crawl; never climb ladders, ropes, or scaffolds; frequently reach overhead with his right upper extremity; avoid concentrated exposure to extreme cold, vibration, and hazards (5A/12-17; 6A/12-17). Insofar as they state the claimant can occasionally crawl; never climb ladders, ropes, or scaffolds; occasionally reach overhead bilaterally; and should avoid concentrated exposure to extreme cold or vibration and no exposure to hazards; these statements are persuasive as they are supported by the longitudinal treatment notes, which generally show the claimant is in no acute distress with normal gait, good strength, intact sensation, normal muscle tone, normal muscle bulk, capillary refill in less than two seconds, and no focal deficit (1F; 4F; 5F; 7F; 8F; 9F; 12F; 14F; 16F; 17F; 18F). This statement is also consistent with the claimant's activities of daily living, which shows he works and can prepare simple meals, drive, and shop in stores (Hearing Testimony; 5E). . . .

> The record includes a January 2021 statement from a state agency psychological consultant, Molly Haas Cowan, PsyD, and a June 2021 statement from a state agency psychological consultant, John David Gavazzi, PsyD. They stated the

claimant has no limitations understanding, remembering, or applying information; no limitations interacting with others; mild limitations concentrating, persisting, or maintaining pace; and mild limitations adapting or managing himself (1A/7-8; 2A/7-8; 5A/9; 6A/10). Insofar as they state the claimant has mild limitations interacting with others and concentrating, persisting, or maintaining pace; and no limitations understanding, remembering, or applying information and adapting or managing himself; these statements are persuasive as they are supported by the progress notes, which mostly show the claimant is fully oriented and cooperative with normal mood, normal affect, normal speech, normal memory, normal cognition, normal behavior, normal thought content, and normal judgment (1F; 4F; 5F; 7F; 8F; 9F; 12F; 14F; 16F; 17F; 18F). These statements are also consistent with the claimant's lack of recent ongoing treatment by any mental health provider.

*Id.* at 24–25.

Such "numerous inconsistences between testimony and the evidence of record" led ALJ Burock to conclude that "the claimant's complaints not fully persuasive." *Id.* at 25. Consequently, based on the medical evidence of record, the ALJ concluded that:

the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and never climb ladders, ropes, or scaffolds. He can occasionally reach overhead bilaterally. He should avoid concentrated exposure to extreme cold or vibration and no exposure to hazards.

*Id.* at 21.

10

Having determined Moumen's residual functional capacity and rejected several grounds for further limitation, ALJ Burock proceeded to the fourth step of the analysis to determine whether he was disabled within the meaning of the Social Security Act. *Id.* at 25. Here, the ALJ compared Moumen's past relevant work and residual functional capacity, finding that he was unable to perform his prior employment as a machine operator.[3] *Id.*

Finally, in the fifth step of the sequential analysis process, ALJ Burock considered Moumen's age, education, work experience, and residual functional capacity to perform light work, concluding that there were other "jobs that exist in significant numbers in the national economy." *Id.* Here, the ALJ leveraged testimony provided by Randall that a person fitting Moumen's parameters could meet the

---

[3] Although Moumen had previously worked as a machine operator and a forklift operator, Tr. 25, 81, and continued to work as a machinist at the time of the hearing, *id.* at 42–45, ALJ Burock found that the claimant was unable to perform any past relevant work. *Id.* at 25. This potential conflict seems to be a product of the fourth-step analysis, where ALJ Burock was required to provide the residual functional capacity that he formulated to Randall, who in turn responded that Moumen would be precluded from any past relevant work. *Id.* at 25, 58–61; *see also* 20 C.F.R. § 404.1545(a). In any event, to the extent that potential inconsistency is relevant, it was not raised on appeal.

requirements of "representative occupations" such as a folder, a marker, or a routing clerk. *Id.* at 26–27.

As a result of this analysis, ALJ Burock determined that Moumen was not disabled and denied his application for disability benefits on May 27, 2022. *Id.* at 12–14. Moumen unsuccessfully appealed the denial to the SSA's Appeals Council. *Id.* at 1–3. The instant appeal to the Court followed.

Moumen initiated this action with the Court on August 14, 2023. Doc. 1. The Commissioner provided the requisite transcripts from the disability proceedings on October 12, 2023. Doc. 7. The parties then filed their respective briefs. Docs. 8, 10. The parties also consented to magistrate jurisdiction on August 22, 2023. Docs. 5, 11.

Moumen alleges two errors warranting reversal or remand. Doc. 8 at 1–2. Specifically, Moumen alleges that the ALJ: (1) improperly considered severe impairments in defining the limitations of his residual functional capacity; and (2) improperly considered non-severe impairments in defining the limitations of his residual functional capacity. *Id.*

## III.  Discussion

### A.  Standard of Review

Review of the Commissioner's decision denying a claimant's application for social security disability benefits is limited to determining whether the factual findings of the final decisionmaker are supported by substantial evidence in the record.  *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial in this context is "more than a mere scintilla of evidence but may be less than a preponderance."  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (citation omitted).  Put more pointedly, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  In an adequately developed record, this can mean "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [ALJ Burock's decision] from being supported by substantial evidence."  *Consolo v. Fed. Mar. Comm'n.*, 383 U.S. 607, 620 (1966) (citations omitted).

Under this deferential standard, "[f]actual findings which are supported by substantial evidence must be upheld." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) (citations omitted); 42 U.S.C. § 405(g). This court's role is not to reweigh the evidence and make factual determinations, but to simply review the record and ensure that the ALJ provided "a discussion of the evidence and an explanation of reasoning for his conclusion sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations and quotations omitted). An ALJ meets that standard by stating "in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of SSA*, 181 F.3d 429, 433 (3d Cir. 1999) (citations omitted). Moreover, when there is countervailing evidence, an ALJ must "give some reason for discounting the evidence he rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted); *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993) (holding that substantial evidence standard is unmet when ALJ fails to resolve conflicts created by countervailing evidence).

Here, ALJ Burock's factual findings were supported by substantial evidence in the record, and the reasoning underlying those conclusions was sufficiently articulated to permit judicial review.

## B.    The ALJ's Residual Functional Capacity Finding

Moumen first contends that ALJ Burock did not provide sufficient limitations in Moumen's residual functional capacity to account for his severe impairments.  Doc. 8 at 11–20.  Specifically, he avers that, in addition to his current limitations, his severe impairments require limitations for being off task for more than ten percent of the workday, unscheduled breaks, absences, and occasional use of his right upper extremity for all purposes.  *Id.* at 20.  Moumen contends that these limitations are supported by the weight of the evidence and are needed to account for future deficits caused by severe impairments, and are necessary to address issues not covered by the ALJ.  *Id.* at 13–19.  A review of the record, however, reveals that ALJ Burock explicitly addressed the issues Moumen alleges he did not, that the included limitations are supported by substantial evidence, and that the ALJ's residual functional capacity determination fully complied with applicable regulations.

In determining Moumen's residual functional capacity, the ALJ concluded that the claimant was limited to "light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) . . . ." Tr. 21. ALJ Burock then proceeded to list further limitations on Moumen's ability to perform certain activities. *Id.* Specifically, the ALJ provided that Moumen may: "occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and never climb ladders, ropes, or scaffolds. He can occasionally reach overhead bilaterally. He should avoid concentrated exposure to extreme cold or vibration and no exposure to hazards." *Id.* ALJ Burock fashioned these limitations to accommodate Moumen's alleged symptoms, at least to the extent that those alleged symptoms were supported by the evidence of record. *Id.* at 25.

As noted above, Moumen contends that these limitations are inadequate, and advances two arguments in support. First, he argues that the weight of the evidence supports more extensive limitations than those included by ALJ Burock. Doc. 8 at 13, 19–20. Second, he posits that, by virtue of having pain in his right upper extremity, neck, and back; depression; vertigo; and dizziness, his ability to concentrate

and focus will be compromised, thus making it difficult, if not impossible, to perform work on a sustained basis. *Id.* at 13.

Generally, "the outcome of [a disability] c[laim] depends on the demonstration of the functional limitations of the disease or impairment . . . [instead of] the mere diagnosis of the disease or name of the impairment." *McKean v. Colvin*, 150 F. Supp. 3d 406, 417 (M.D. Pa. 2015) (citing *Alexander v. Shalala*, 927 F. Supp. 785, 792 (D.N.J. 1995), *aff'd sub nom.*, *Alexander v. Comm'r of Soc. Sec.*, 85 F.3d 611 (3d Cir. 1996)). Thus, "[a] diagnosis of impairment, by itself, does not establish entitlement to benefits . . . ." *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004). Rather, the Social Security Act requires "objective medical evidence showing the existence of an impairment which could reasonably be expected to produce the claimed pain." *Id.* at 781.

In assessing whether the objective medical evidence shows the existence of an impairment which could reasonably be expected to produce a claimant's alleged pain, the ALJ "may properly accept some parts of the . . . evidence and reject other parts, but he must consider all the [probative] evidence and give some reason for discounting the evidence he rejects." *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

Notably, this does not mean that the ALJ must undertake an exhaustive discussion of *all* of the evidence. *See, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001); *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."); *Beety-Monticelli v. Comm'r of Soc. Sec.* 343 F. App'x 743, 747 (3d Cir. 2009) ("[The ALJ] need not mention every piece of evidence in the record.").

Consistent with these principles, a claimant's "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529). As such, when a claimant's statements about the severity of their impairment are not well-grounded in the objective medical evidence, but the underlying impairment "could reasonably be expected to produce" the complained of pain or symptoms, the "ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *McKean*, 150 F. Supp. 3d at 415–16.

This mandate to anchor both statements and credibility determinations in the evidence of record overlaps with the regulatory

framework governing an ALJ's assessment of alleged symptoms. The regulations require consideration of all symptoms and the extent to which such symptoms are reasonably consistent with the objective medical and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). This includes the claimant's statements and descriptions from medical and non-medical sources regarding how the symptoms affect the claimant's activities of daily living and ability to work. *Id.* At bottom, the regulations require objective medical evidence from an acceptable medical source showing the presence of an impairment that could reasonably be expected to produce the symptoms alleged and that, when considered with all the other evidence, would lead to a disability determination. *Id.*

When evaluating a claimant's symptoms, the ALJ must follow a two-step process, where he: (1) ascertains whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms; and (2) evaluates the intensity and persistence of the claimant's symptoms such as pain, and determines the extent to which they limit his or his ability to perform work-related activities. SSR 16–3p, 82 Fed. Reg. 49462, 49462–63 (Oct.

25, 2017). To assist in the evaluation of a claimant's subjective symptoms, the regulatory framework identifies several factors that may be relevant to the assessment of the severity or limiting effects of a claimant's impairment. 20 C.F.R. §§ 416.929(c)(3), 404.1529(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or his symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or his symptoms; and any other factors concerning the claimant's functional limitations and restrictions. *Id.*

Here, ALJ Burock properly weighed the objective medical evidence and followed the two-step process for assessing Moumen's credibility. At the first step, the ALJ found that Moumen's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 22. In reaching this conclusion, he found that the record corroborated Moumen's hearing testimony that he

> is unable to work as he has constant pain in his neck, shoulder, and lower back; pain limits his ability to dress and

> bathe; he has disrupted sleep; and has occasional blackout
> spells. He claims he has difficulty lifting, squatting, bending,
> standing, reaching, walking, sitting, kneeling, climbing
> stairs, completing tasks, concentrating, and using his hands.
> The claimant alleges he must rest after walking a minute, had
> trouble paying attention, and takes awhile to finish what he
> starts. He insists he has muscle spasms; must stand after
> sitting 20 minutes; can stand only 20 minutes; must alternate
> between standing and sitting; must lean on a table; has pain,
> dizziness, and fatigue after working just four to five hours;
> gets vertigo and dizziness episodes weekly, and more often if
> active; has numbness in his left leg; and has daily pain from
> his neck down radiating into his right hand . . . .

*Id.* That is, Moumen's severe impairments, coupled with his allegations

concerning his symptoms impeding his ability to work, care for his

personal needs, sleep, move, concentrate, and work at a consistent pace

led ALJ Burock to find that the former could reasonably cause the

latter. *Id.*

At the second step, however, ALJ Burock found that Moumen's

"statements concerning the intensity, persistence[,] and limiting effects

of these symptoms are not entirely consistent with the medical evidence

and other evidence in the record . . . ." *Id.* In support of that

determination, the ALJ evaluated the location, duration, frequency, and

intensity of Moumen's symptoms, activities of daily living, medications,

and treatments he used to alleviate his symptoms.

First, ALJ Burock first evaluated longitudinal records concerning Moumen's symptoms, treatments, and medications, and found that "the claimant is in no acute distress with normal gait, good strength, intact sensation, normal muscle tone, normal muscle bulk, capillary refill in less than two seconds, and no focal deficit." *Id.* Relevant to that finding were the observations that Moumen's right shoulder pain was "greatly improved"; and that the claimant, stating that his left groin pain was "manageable," declined medication. *Id.* at 22–23. Indeed, "the claimant's treatment has largely been conservative, as there is minimal medical evidence of surgical treatment or narcotic pain medication. Moreover, there is minimal medical evidence of record of significant treatment . . . ." *Id.* at 23. Further supporting the finding was the fact that Moumen had worked as a machinist during the course of his treatments on at least two separate occasions and in "a different job, standing with requirements to stand for 10 hours." *Id.* (citation and quotation omitted).

Second, ALJ Burock separately assessed Moumen's activities of daily living, and found that they tended to show his symptoms were less

debilitating than he alleged. More specifically, the ALJ concluded that

Moumen's statements were

> inconsistent with his activities of daily living, which shows he
> can prepare simple meals, do light cleaning, drive, shop in
> stores, and manage money. The claimant notes he reads[] and
> has no problems with family, friends, neighbors, authority
> figures, and others. He testified he started working where he
> lifts 25 to 50 pounds (Hearing Testimony; 5E).

*Id.* at 23–24. Therefore,

> the undersigned finds the claimant can perform light work
> and he can occasionally balance, stoop, kneel, crouch, crawl,
> and climb ramps and stairs; and never climb ladders, ropes,
> or scaffolds. He can occasionally reach overhead bilaterally;
> can have no concentrated exposure to extreme cold or
> vibration; and no exposure to hazards.

*Id.*

Having found Moumen's statements concerning the limiting

effects of his symptoms inconsistent with the relevant evidence of

record, ALJ Burock deemed his statements non-credible. *Id.* at 25.

This, in part, informed the ALJ's finding that Moumen can perform

light work subject to a host of other personally tailored limitations. *Id.*

at 22. As ALJ Burock recognized, though the record indicated the

presence of *some* severe impairments, "numerous inconsistencies" led

him to find that Moumen "retains the ability to perform work activity

within the limitations set forth" in his decision. *Id.* at 23–25. Overall, that thorough reasoning readily permits meaningful judicial review.

Moumen's overarching argument that the limitations in his residual functional capacity are inadequate to account for his impairments is unavailing because, as outlined above, the method ALJ Burock used to assess the limiting effects of his symptoms was sound. Preliminarily, to the extent Moumen speculates that some of his impairments may lead to an increase in symptoms based on the nature of the impairments, and that he therefore requires greater limitations than those found by ALJ Burock, Doc. 8 at 13–14, 16, that argument fails. A claimant must provide credible evidence showing "that the impairment resulted in disabling limitations." *Phillips*, 91 F. App'x at 780. Moumen failed to meet his burden—though the ALJ requested additional evidence, Moumen "did not submit any additional evidence of treatment for the claimant's spinal condition." Tr. 23. Absent credible evidence, mere speculation, as offered here, falls short of meeting that burden.

Alternatively, to the extent that Moumen argues that the weight of the evidence supports greater limitations, that contention also yields

no relief.  If an ALJ's factual findings are supported by substantial evidence, the Court must uphold them.  *Ficca*, 901 F. Supp. 2d at 536; *see also Consolo*, 383 U.S. at 620 ("something less than the weight of the evidence, . . . does not prevent [it] from being supported by substantial evidence.").  Thus, assuming *some* evidence supports one of ALJ Burock's findings, all he need do to comply with the substantial evidence standard is to state "which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck*, 181 F.3d at 433.  That is precisely what ALJ Burock did here, when he laid out the objective evidence relevant to assessing Moumen's statements concerning the limiting effects of his symptoms, and then assessed the credibility of the statements by comparing the two.  Tr. 21–25.

Although Moumen may disagree with the ALJ's conclusions, his assessment of his symptoms was supported by a large quantity of evidence.  *Id.* at 433–35, 617–58, 664–762, 994–1030, 1032–66, 1069–95, 1120–1209, 1219–26, 1237–39, 1245–47, 1355.  After surveying this evidence, the ALJ thoroughly explained his reasons for rejecting Moumen's statements regarding the limiting effects of his symptoms in favor of the relevant objective evidence in determining his limitations.

*Id.* at 22–25.  As such, ALJ Burock's limitation findings, insofar as they are based on this comprehensive credibility assessment, must be upheld.  *Ficca*, 901 F. Supp. 2d at 536; *Schaudeck*, 181 F.3d at 433; *Diaz*, 577 F.3d at 506.

Accordingly, as a review of ALJ Burock's opinion shows that his limitation findings were based on substantial record evidence, and the reasoning underlying those findings was sufficient to enable judicial review, they will not be disturbed.  *Ficca*, 901 F. Supp. 2d at 536; *Diaz*, 577 F.3d at 506.

## C.    Evaluation of Moumen's Non-Severe Impairments

Moumen next argues that the ALJ erred in not finding that his left shoulder pain, left groin pain with inguinal hernia, chronic fatigue, severe hip pain, depression, heart palpitations, headaches, and vertigo with dizziness with syncope episodes warranted additional limitations on his residual functional capacity.  Doc. 8 at 22.  In the alternative, he argues that these non-severe impairments were not sufficiently discussed or addressed in the ALJ's limitation findings.  *Id.*  But these arguments yield no relief where, as here, any potential error was

harmless and the ALJ evaluated the record and articulated his findings to a degree sufficient to permit meaningful judicial review.

The second step of the Social Security Act's sequential disability analysis requires an ALJ to determine whether a claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is considered severe only if it "significantly limits an individual's physical or mental abilities to do basic work activities." *Id.* § 404.1520(c). Impairments are found non-severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ." SSR 85-28, 1985 WL 56856, at *3 (1985).

At step two of the analysis, the burden lies on the claimant to establish that he or she has a severe impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The Court of Appeals has explained that the evidentiary burden to show a "severe" impairment is relatively low, because step two only functions as "a de minimis screening device to dispose of groundless claims." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting *Newell v. Comm'r of Soc. Sec.*, 347 F.3d

541, 546 (3d Cir. 2003)).  This means that "[o]nly those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits at step two." *Newell*, 347 F.3d at 546 (citing *Bowen*, 482 U.S. at 158 (O'Conner, J., concurring)).

However small the evidentiary burden at step two may be, there still must be sufficient objective medical evidence to support a finding of severe impairment. *Kirk v. Comm'r of Soc. Sec.*, 177 F. App'x 205, 207 n.3 (3d Cir. 2006).  Moreover, even if an ALJ errs at step two in finding a condition is a non-severe impairment, that error is harmless where the analysis nevertheless moved beyond step two on account of a finding that the claimant had other severe impairments. *See Orr v. Comm'r Soc. Sec.*, 805 F. App'x 85, 88 (3d Cir. 2020) ("[B]ecause the ALJ progressed to a later step, any error at Step Two would not alter the remainder of the five-step process, much less the overall outcome."); *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007) (same).

Here, at the second step of the sequential evaluation process, ALJ Burock found that Moumen was afflicted with two severe impairments: shoulder osteoarthritis, and degenerative disc disease in the cervical

28

and lumbar spine.  Tr. 19.  He also considered evidence of several other alleged impairments, including anxiety and depression, but found that these conditions were not severe.  *Id.*

Moumen's argument that ALJ Burock erred in not finding that several of his documented conditions were severe impairments provides no tenable grounds for relief.  Even assuming Moumen is correct, and that ALJ Burock erred when he found that Moumen's left shoulder pain, left groin pain with inguinal hernia, chronic fatigue, severe hip pain, depression, heart palpitations, headaches, and vertigo were non-severe impairments, Doc. 8 at 21–23, it would have been harmless. Despite finding that those eight issues were not severe impairments, the ALJ still found that two of Moumen's impairments (degenerative disc disease in the cervical and lumbar spine, osteoarthritis in the shoulder) were severe and continued beyond step two of the sequential analysis on that basis.  Tr. 19–27.  This means that, irrespective of any error at step two, Moumen would have suffered no harm "because the ALJ progressed to a later step[.]"  *Orr*, 805 F. App'x at 88.

Further, the eight issues Moumen argues should have been deemed severe impairments are not even cognizable as impairments

under the relevant regulation. "[A]n individual's symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect the individual's ability to do basic work activities . . . unless medical signs and laboratory findings show that there is a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptom(s) alleged." SSR 96-4p, 1996 WL 374187, at *2 (1996). That is, unless there is sufficient evidence of some associated diagnosed or diagnosable symptoms, general maladies, mental deficits, and disturbances cannot be deemed independently disabling. *See id.*

In the instant appeal, the non-severe impairments advanced by Moumen hew much more closely to symptoms of underlying conditions, rather than medically determinable impairments. *See id.*; *Williams v. Colvin*, 2014 WL 4918469, at *8 (M.D. Pa. 2014) ("[A]n anxiety attack is a symptom, and not an impairment."); *Murphy v. Astrue*, 2013 WL 3964910, at *2 (D.N.J. 2013) ("[T]he ALJ also noted that [claimant]'s symptoms of leg edema and chest pain were not 'diagnostically related' to his [condition]."); *Neff v. Astrue*, 875 F. Supp. 2d 411, 424 (D. Del.

2012) ("Subjective symptoms[] . . . must be supported by objective medical evidence.").

Further, the administrative decision undermines Moumen's alternative argument, Doc. 8 at 22–23, that these eight issues were insufficiently discussed in the ALJ's limitation findings. As set forth above, the ALJ considered the conditions and found them to be non-severe impairments, due to the "numerous inconsistences between testimony and the evidence of record" and the claimant's failure to provide additional materials. Tr. 22–25. Thus, they did not warrant any further limitations beyond those already imposed by ALJ Burock in his residual functional capacity determination.

In essence, Moumen asks the Court to reweigh the evidence in his favor. But "[c]ourts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Because any alleged error made by ALJ Burock at step two would have been harmless, and because his conclusions and accompanying findings concerning Moumen's impairments are supported by substantial evidence in the record and

are sufficiently articulated to permit judicial review, they will be upheld. *Orr*, 805 F. App'x at 88; *Kirk*, 177 F. App'x at 207 n.3.

## IV.  <u>Conclusion</u>

Accordingly, the Court affirms the Commissioner's decision.  A separate order shall be issued.

Date:  October 9, 2025          ***s/ Phillip J. Caraballo***
                                Phillip J. Caraballo
                                United States Magistrate Judge